Chief Justice Robertson
delivered the Opinion of the Court;
Judgment haVing been obtained by the plaintiff below; . ,. c . .. ... 111 ai1 action ot assumpsit, on a written acceptance endorsed, ibI accept the within,” and signed by the accept- . , ° , , r tor, on a bill ot exchange, drawn on him—two ques* tions are presented for revision: First1—Is the fact that 1 , ... . , , , . . the payee, before the bill became payable, agreed with ¿[rawer that pe would not sooner than two or threé , months after the day of payment, present it for payment? aii avaiíablé defence to the aütion? and, second-Is assumpsit maintainable?
fiirsí. The modern and more consistent doctrine sefetoS to be, that even an accommodation abceptor does not stand in the attitude of a mere surety for the drawer; that his undertaking is that of a sole and indepen* dent principal; and, of course, the equitable doctrine *353 ^respecting mere sureties, should not be applied to ac'C'eptors; and moreover, were it applicable', it would be unavailing in this common law action, especially as the written acceptance does not show, that it was merely je r r . . r , . ~ ior the accommodation oí the drawer.
acpeptancesof bills in the common forma, (e..g.‘I ^ept’the with-within the act of cefoaínSun¿eale'á writings 'the éfties-and t^at assumpsit is still actionP«^onUS¡ acceptances wii tms“
Second. From considerations of fitness and 'congruity, fortified by usage and common understanding, we are disposed to think that—even if the words “/ accept tJie , . , , uiuhin, signed 'and endorsed on á bill of 'exchange, •should be understood, grammatically or legally, as importing a direct promise 'or stipulation to pay the amount 'of the bill—nevertheless, such undertakings wer% not contemplated or intended tó be 'embraced by the statute of 1812, for 'elevating certain unsealed executory agreements in writing tó the dignity of specialties, According to the common law, or that braiich of it denominated the lex mercatoria, an acceptance of a bill is, per se, evidence of consideration; and heré áló'he we see 'one strong reason for the act of 1812 being inapplicat ble to acceptances óf bills of exchange. And, it would, besides, seem somewhat incongruous, that one party (the acceptor) liable on a bill of exchange, should stand oñ a footing different from that on which all other parties are placed, and that debt ór covenant should be the only remedies against him, whilst assumpsit might be maintainéd on the liabilities of other parties; and also-, that they might be protected by the statute of limita^ tions, whilst he alone being bound, as by a speciality; could not plead the statute.
But it is far from being certain, that an ordinary ac¿ ccptance endorsed on a bill, imports a direct promise to pay the amount of it to the drawee. It may be, according to the law merchant, evidence of liability to that extent, and yet not be, per se, a direct undertaking. And although it is now settled, that an action of debt may be maintained against such an acceptor, yet that proves no more than that the liability resulting from the acceptance, is such, whatever may be its character, as will authorize indebitatus assumpsit, which may be maintained, not only on direct promises to pay money, but also on liabilities imposed or implied bylaw.
*354 Wherefore, considering the usage of this state since 1812, in connection with the nature of the subject itself, we are inclined to the conclusion, that the statute 1812 docs not aPP]y to ordinary acceptances in writing endorsed on bills of exchange; and that, conse* quently, assumpsit may, according to the practice here since as well as before 1812, be maintained on such an acceptance.
■ Wherefore, the judgment must be affirmed. .